'GEO. C. McLARTY and wife *vs.* G. D. BROOM, EX'R. of W. D. HOWARD, R. P. BARRETT and wife, and J. W. McMURRAY and wife.

A testator, who died in 1864, gave the bulk of his real and personal estate to three sisters, equally to be divided between them, and directed his Executor to sell on twelve months' credit. The sale was made in November, 1864; the husbands of two of the sisters, one of whom was the guardian of the third, bought most of the property, a negro and a few articles of personal property being bought for the ward. By agreement, instead of giving their notes, they gave receipts to the Executor for the amounts of their respective purchases in part of their wives shares, and, at the same time, the Executor passed over to one of them, whose purchases were less in value than the others, a considerable amount of solvent notes given to the testator, some before the war; *Held,* that, notwithstanding there was no intent on the part of the Executor and said purchasers to defraud the infant sister, as the departure from the directions in the will, as to sale on credit, resulted in loss to her, she is entitled now to be put in the situation she would have occupied had said directions been carried out literally, and to have an equal division of the testator's property.

In such case, receipts given by the ward, soon after she became of age, for the amount of her purchases at the sale, and for her share of confederate money, received on the day of sale, will not have the effect to ratify the said dealings with the estate.

A sale by an Executor in November, 1864, of land, farming utensils, &c.,

directed to be sold on twelve months' credit for Confederate money is not an exercise of due prudence.

A guardian may concur, in behalf of his ward, in a partition of property in which the ward is a tenant in common, provided the partition be equal. But when the guardian was personally interested, he cannot insist upon a partition agreed to by him, by which his ward gets less than his share.

Petition for settlement, heard before *Buxton, J.,* at Spring Term, 1872, of the Superior Court of Union, upon appeal from the Probate Court.

The material allegations in the petition or complaint are: that W. D. Howard, late of Union County, died, in 1864, leaving a will of which the defendant Broom qualified as executor at July term, 1864, of Union County Court; that the testator left a large estate of realty and personalty, of which he gave by said will a tract of land to a brother, and small pecuniary legacies to some half-sisters, and then directed that all the remainder of his real and personal property should be sold by his said executor, the land on twelve months credit, and the proceeds, with all his notes and money, after the payment of his debts and said pecuniary legacies, should be equally divided between his three sisters, Sarah J. McMurray, wife of the defendant J. W. McMurray, Julia A. Howard, now the wife of the defendant Barrett and Mary Howard now the wife of plaintiff G. C. McLarty; that on the 3rd of November, 1864, Broom, the executor, sold said real and personal property on a credit for a large sum of money; that of the realty sold were two tracts of land upon which were erected mills in which the testator owned a third interest, and the defendant, McMurray, became the purchaser at $9,100, and that the lands are worth $4,000 in good money; that the aggregate sales amounted to $35,000, and there were solvent ante-war debts amounting to several thousand dollars; that the *feme* plaintiff was then a minor, the defendant McMurray was her guardian, and she became of age December 24th, 1864; that the defendant

Broom had in September, 1869, a pretended *ex parte* settlement with the Probate Judge; that from that settlement it appears, that after allowing him proper credits he was charged with $43,898.44, belonging to the *feme* plaintiff and the *feme* defendants, making the share of each $14,632.87; that of the share of the *feme* plaintiff, she was charged with a receipt dated February 23d, 1865, for $7,196.13, which was in fact the amount of a note given by S. B. Howard, for a negro bought at the sale, and which was handed over to her, with a receipt for $2,095.50, given by her guardian, Nov. 3, 1864, as if for Confederate money, but which was really part of the price of the land bid off by him, and with a receipt dated January 4th, 1865, for $1,675.63, the price of a negro and a few articles of small value bid off by her at the sale, leaving an apparent balance of $507.88, in Confederate money due her; that in said pretended settlement the share of the wife of the defendant McMurray is charged with the amount of his purchases at the sale, which includes the valuable realty aforesaid and other valuable property; that the defendant Barrett received valuable assets in ante-war notes, &c.; and that said pretended account still shows a large balance due them.

The petition asks for a discovery in relation to the receipts given by the *feme* plaintiffs, the purchases by McMurray, the value of the notes received by Barrett and wife, &c., and prays for an account and settlement of the testator's estate.

The answers of the defendants admit substantially most of the material allegations of the petition, but aver good faith and fairness in their dealings in connection with the estate of the testator.

The answer of defendant Broom says, that the receipt for $7,196.13, with which *feme* plaintiff is charged, was for the amount of a note given by S. B. Howard for purchases at the sale, of which $7,000 was for a negro, but that the note *was good* at the time it was transferred to *feme* plaintiff; that the $2,095.50, with which she is charged, was her one-third of a

sum of Confederate money taken on the day of sale; of which sum $1,800 was paid him by a Confederate impressing officer, in compensation for two mules he impressed, and the remainder was the price of 300 bushels of corn, which, under the direction of the legatees, the *feme* plaintiff being represented by McMurray, her guardian, he sold for cash, so that certain widows and poor people, who were present and unable to give security, might purchase for cash, and that the receipt for $1,675.63, was for a negro bid off by *feme* plaintiff at $800, and a gold watch and other articles bought by her. He says further, that McMurray bid off land and other property to the amount of $17,000, that the share of his wife in the estate was $14,632.81, and he settled the balance by transferring to him, Broom, a negro bid off at $1,500, and giving his note for the residue, which note was sued on and collected, according to the value of the property bought, to the amount of about $300, since the war; and that he had paid on the share of R. T. Barrett in right of his wife $10,286.36, which included his purchases at the sale, one-third of said Confederate money and notes given to the testator before his death, some before and some during the war, amounting to about $2,000. He also says, that the property was not sold for any particular currency, but brought high Confederate prices; that he supposed the nominal amount of the notes taken by him would be collected, not anticipating the subsequent legislation relating to depreciated currency; that he settled with the legatees as far as he could in notes, none of them expressing any preference for ante-war notes, and took receipts of the legatees for purchases, in part payment of their legacies.

The answer of the defendant, J. W. McMurray, says, that what he received from the testator's estate was property purchased by him at the sale, worth only about $2,500, that he accepted the account of the executor as correct and settled with him accordingly; that he received his own share of the Confederate money taken by the executor as stated by him, and that

ot the *feme* plaintiff, his ward, and after she became of age, paid the amount to her, and took from her a receipt for the same, expressed to be " in full of all money which came into his hands as my guardian, from' G. D. Broom, executor of W. D. Howard's estate," which receipt is dated February 20th, 1865. He denies any responsibility for the official misconduct of the executor, or that he is liable to account for his guardianship in this action.

An account being taken and report made by the Judge ot Probate, which were substantially in accordance with the settlement by the executor, the plaintiff filed exceptions thereto. The first exception, the only one necessssary to understand the opinion of this court, is as follows:

1. That the principle · upon which the report is based is erroneous. That instead of charging Broom, as executor, with the assets and crediting him with his vouchers, according to his return, the Probate Judge should have held him responsible for the value of the estate, at the expiration of twelve months after the sale of the property, directed by the will to be sold on that credit; or he should have declared Broom and McMurray trustees, and charged them, as such, with the value of all the property purchased by McMurray at the sale, and charged Broom and Barrett, trustees, with the property purchased by the latter and the ante-war notes paid to him, Broom, and also charged the plaintiff and Broom, as trustees, with the property bought for *feme* plaintiff, so as to bring the whole into hotch-pot, and apportion the same equally according to the intent of the testator.

The case having been taken up to the Superior Court by appeal, His Honor, Judge Buxton, overruled the fist exception, and gave the following reasons therefor: " The rule of accountability contended for in the first branch of this exception, however correct in itself is inapplicable, as there is abundant proof in the testimony, and the court so finds that the rule was departed from with the full concurrence of all parties concerned,

all of whom purchased property and gave receipts to the exe-cutor. The mode of accountability suggested in the second branch of this exception, of holding the defendants responsible as trustees of the property purchased, could only be sustained in the event that fraud and combination, injurious to the plain-tiffs were alleged and proved. There is no such allegation or proof in this case. It was advantageous to the interests of the devisees to allow any of them disposed to do so, to bid for the property. The terms of sale are filed, and correspond with the requirements of the will, and were followed."

Of the other exceptions some were sustained and others over-ruled. The plaintiffs appealed.

*J. II. Wilson*, for the plaintiffs.
*Battle & Son*, for the defendants.

Pearson, C. J. The result of the actings and doings of the defendants in regard to the estate, is very unfortunate for the plaintiff. Instead of receving an equal share with her two sis-ters of their brother's bounty, she has received only his watch and a few other articles, whereas the husband of one of her sisters, in right of his wife, has secured to himself real estate of much value, and the husband of her other sister, in right of his wife, has realized a large sum out of the ante-war notes due to the testator. The question is, have the plaintiffs a legal or equitable right to complain of this result, and to demand that an equal division be now made? Or was this inequality of division caused in a manner and under circumstances which puts it out of the power of the Court to grant relief under any known and recoguized principle of law or equity?

The draftsman of the complaint seems not to have fixed in his mind any specific head of equity, on which to rest his case, and was content to state the facts, and demand an account and settlement of the estate upon general principles of equity and fairness.

The first exception to the report is made specific, and puts the right of the plaintiff on two grounds.

1st. The executor was directed by the will to sell at public sale on a credit of at least twelve months, taking bond and security, with interest from date; and although it suited the convenience of the executor, and of the defendant McMurray, that McMurray's receipt for his wife's share of the estate should be taken in place of a note at twelve months credit, in discharge of his bid on the land, and of the defendant Barrett, that he should take the ante-war notes, and give his receipt for the face of the notes in part of his wife's share. *On the supposition,* (which may have been innocently entertained) that it could make no difference, whether McMurray gave a receipt or a note with security at twelve months, and that it could make no difference, that Barrett took all of the ante-war notes and left a corresponding amount of Confederate treasury notes, to pass to the lot of his wife's sister, the feme plaintiff; yet, as by reason of subsequent events, it appears that, "this supposition" was not true, and that, in point of fact, it did make a very great difference, to the injury of one of the objects of the testator's bounty. The defendants cannot, with a good conscience, avail themselves of a *mistake,* as to the fact that, giving a receipt would have the same effect as giving a note, at twelve months, and of a mistake as to the fact, that a Confederate note was as good as an ante-war note; and that the plaintiffs are entitled to be put in the same condition as if the defendants had not acted under this mistake; that is to say, charge the plaintiffs with the Confederate treasury notes according to the scale, and with the value of the watch and other articles as if she had given a note at twelve months; charge McMurray with the value of the land and other property, as if he had given a note at twelve months, and charge Barrett as if "the ante-war notes" had been divided into *three equal parts.*

His Honor rejected this view of the case, on the ground "that the rule," that is, (as we understand him) the direction

to sell at twelve months credit, "was departed from with the full concurrence of all the parties concerned, &c."

The fact is found, that the feme plaintiff was at the time of these transactions under the age of 21 years, and that defendant McMurray was her guardian, so, as an inference of law, his Honor ruled, that a guardian who is a party interested in the fund can bind the ward, by his concurrence in a departure from the directions of the will, to sell at twelve months credit; and on a sale made for the purpose of partition, may in behalf of the infant, give a concurrence to an arrangement by which he, one of the parties to the partition, may give a receipt, instead of a note, at twelve months, for his bids. We do not concur with his Honor in this ruling. A guardian may, in behalf of his ward, give his concurrence to a partition, and it will bind the ward, provided the partition be equal, for the co-tenants may compel partition. Bacon's. Abridge. Title Guardian and Ward, Head 5.

A guardian may assign dower and it will bind the ward, provided it be equal, otherwise not, for the widow may compel an assignment. Fitzherbert's Nat. Brev., Writ of Admeasurement of Dower. In our case there was no necessity for making a sale for the purpose of partition at the time it was attempted. In *November* 1864, no prudent man would have converted real estate into Confederate treasury notes; nor would he, without some special occasion, have converted stock, farming utensils, grain, &c., into Confederate treasury notes; as to slaves, it could not make much difference whether they were converted or not, for the probability, amounting almost to certainty, was that in a few months neither slaves or Confederate treasury notes would be of any value. We are led to the conclusion that the executor would not have made the sale, except for the understanding between him and the defendants, McMurray and Barrett, that they were to buy the property, and that he would take their receipts, instead of notes at twelve months, and so effect a partition. In making this arrangement

the interest of the infant, tenant in common, was overlooked. She did not have a fair chance, and could not bid except by sufferance and a promise to ratify when she arrived at age; so there was no necessity for this proceeding, and the partition effected by it was unfair and unequal, and the concurrence of the guardian did not bind the ward; indeed, as the guardian was personally interested in the matter, he cannot insist upon holding the ward bound by this partition, for, by doing so he abandons the ground that he was acting innocently, under a mistake as to fact, that it made no difference whether he gave a receipt or a note at twelve months, and subjects himself to an imputation of fraud and unfair dealing towards his ward. Where the supposition that a departure from the directions of the will could make no difference turned out to be a mistake, and it was found that it did in fact make a great difference, to the injury of the infant co-tenants, an attempt to retain the advantage of the mistake, and a refusal to redress the wrong, was almost as bad as if the act had been done by design in the first instance.

2. This brings us to the second ground on which the exception is put. His Honor finds, that there is no allegation or proof of fraud and combination injurious to the plaintiff. There are two kinds of fraud. There is no proof or allegation of actual fraud. This is fixed by the finding of his Honor; but constructive fraud is an inference of law from the relation of the parties; as, if a guardian so manages as to acquire the property of his ward during his minority, or soon after he arrives at full age, the law will presume fraud, and the guardian can only hold the propertey as security for his advancements; this presumption is made on the ground of public policy, and the transfer is treated as a mere security, and may be avoided, unless the guardian proves that no advantage was taken of the influence acquired by the relation.

We have the fact found by his Honor, that McMurray was the guardian of the *feme* plaintiff; that there was an under-

standing that McMurray's receipt would be taken in place of a note at twelve months, and that the result was, that the interest of the ward was, very much to her injury, *converted* from a third part of valuable real and a third part of ante-war debts, into Confederate treasury notes! So, in this instance, the accuracy of the presumption of law, in regard to transactions between persons occupying certain relations, is fully verified.

The defendants, Broom and Barrett, take the ground that the plaintiffs should look to McMurray, who was the guardian of the *feme* plaintiff; but that does not serve their turn ; for the transaction in selling the land, when there was no necessity for it, and in handing over to Barrett the ante-war notes, and the arrangement by which their receipts instead of their notes at 12 months was to be taken cannot. All of the defendants together, and the plaintiffs, have a right to insist, not on a settlement with her guardian alone, but on a settlement with the executor of her brother and with her two sisters and their husbands, in order that the direction of the testator, that there should be an " equal division between his three sisters, share and share alike," may be carried into effect.

The counsel of the defendant, on the argument here, took the position that the *feme* plaintiff had confirmed and ratified the partition and the action of the defendants, in respect to the estate, by giving two receipts, after she was of full age. The point seemed not to have been made in the Court below, but it is insisted that it is presented by the facts found by his Honor in respect to other exceptions, to wit : The sale was made November, 1864, *feme* plaintiff came of age 25th December, 1864, married September 1866, gave a receipt to the executor for the price of a negro woman, gold watch and other articles, $1,675.63, dated 4th January, 1865, and gave a receipt to her guardian for her share of the money received for two mules impressed and of the corn sold for cash in Confederate treasury notes, $2,075.50, dated 29th February, 1865. These receipts are evidence of the facts recited, but no further effect can be

McLARTY AND WIFE *v.* BROOM, EX'R.

allowed to them.   Such was the opinion of his Honor, and we concur with him.

We must assume that the young lady was a member of the family of her guardian, who was her brother-in-law, during her minority and for some time after she arrived at age.   It is familiar learning,—a settlement or dealing of a guardian with a ward, soon after the ward arrives at age, will be set aside, unless the guardian proves that the settlement or dealing was fair, that the ward had full knowledge on the subject, intended to confirm what had been done, had the benefit of the advice of friends, and that no advantage was taken of the influence which it is presumed the relation gives to a guardian.

In our case, the receipts were signed within less than two months after arrival of age; there was no intention to confirm *all* that had been done.   The recitals in the receipts are confined to the specific facts, which excludes any covert design to extend to a confirmation.   The young lady had no knowledge in regard to her rights, and signed the receipts as a matter of course, because told to do so, and because she believed that what had been done by the executor and her two brothers-in-law was all right.

So far from having the aid of friends, she acted by the direction and advice of relatives whose interests were adverse to hers, and who were laboring under the mistaken impression that a departure from the directions of the will could make no difference.   So the idea of a confirmation by which her rights are excluded is out of the question.

It is not necessary to notice the other exceptions.

There is error.   Judgment reversed.   This will be certified to the end that another reference may be ordered.

PER CURIAM.                              Judgment reversed.